**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 95-50739
Summary Calendar
_____


LEON ANTHONY BENJAMIN,

Plaintiff-Appellant,

VERSUS

RICHARD HARVEY, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Western District of Texas
(95-CR-20036)
_____

July 11, 1996

Before SMITH, BENAVIDES, and DENNIS, Circuit Judges.

PER CURIAM:[*]


Leon Benjamin appeals an adverse summary judgment in his prisoner's civil rights suit filed pursuant to 42 U.S.C. § 1983. We affirm in part and vacate and remand in part.


I.

---

Pursuant to 5ᴛʜ Cɪʀ. R. 47.5, the court has determined that this opinion should not be published except under the limited circumstances set forth in 5ᴛʜ Cɪʀ. R. 47.5.4.

At the time he filed suit in March 1994, Benjamin was a Texas state prisoner confined at the Hughes Unit in Gatesville, Texas. He filed a verified civil rights complaint against correctional officers Richard Harvey, Kirk Perkins, and Michael Busby; Sergeant Raymond Leonard; and nurses Cynthia Hester and C.C. Young. Benjamin asserted that the officers had retaliated against him, inflicted cruel and unusual punishment, failed to protect him, conspired to violate his civil rights, and used excessive force; and the nurses deprived him of medical care following the use of force in violation of the U.S. Constitution and the laws of Texas.

Benjamin alleged specifically that Perkins made verbal threats to harm him physically because Benjamin had filed grievances against Perkins and other officers. Benjamin asked to see a supervisor to report the verbal abuse and threats, and Leonard responded. Leonard asked Benjamin why he had thrown urine on Perkins, and Benjamin stated that Perkins was lying if he said that Benjamin had thrown anything. Leonard called upon Harvey, Busby, and Bell to search Benjamin's cell and to remove all containers and personal property. Benjamin prepared a complaint to the unit warden.

Later that morning, Perkins was in charge of distributing food trays and refused to give a meal to Benjamin. Benjamin asked Officer Walton, who was assisting Perkins, for a food tray, and Perkins told Walton that Benjamin would not be eating because he had filed grievances against Perkins and his fellow officers.

2

According to Benjamin, Walton and Perkins returned to his section with a container from the food cart. Perkins threw the contents of the container, which included tobacco spit, body waste, and tea, on Benjamin.

At Benjamin's request, Leonard returned to Benjamin's cell, and Benjamin reported the incident. Leonard ordered Benjamin to remove his clothes, strip-searched him, and instructed Harvey and Busby to escort Benjamin to a steel cage. After Benjamin's cell was cleaned, Leonard, Busby, and Harvey came to the steel cage, handcuffed Benjamin, and proceeded to take him back to his cell.

As he exited the cage, Busby struck Benjamin in the back of his head with a closed fist, and Harvey hit him on the side of his head. Both officers slammed Benjamin to the floor, Harvey kicked him on the left cheek, and Leonard kicked him in the back. Benjamin received another blow to the head but could not tell which officer administered the blow. Perkins stood nearby with a friend observing, cheering, and mocking Benjamin as he was beaten and did nothing to defend or protect him. Leonard ordered several officers to place Benjamin in restraints and to take him to the administrative segregation infirmary.

Benjamin alleged that he was examined by Hester and Young. Benjamin told the nurses that he was experiencing severe pain in his back, head, and face, and there was a large lump on his already-swollen left cheek. Benjamin stated that the nurses did not provide treatment for his injuries or medication for pain.

The officers took pictures of Benjamin and escorted him back to his cell. Benjamin remained in his cell for ten days without any pants, shirts, socks, shoes, towel, pillow cases, sheets, or blankets, even though the outdoor temperature was in the forty-degree range.

## II.

Benjamin sought equitable relief and money damages. The defendants filed a motion to dismiss, asserting sovereign immunity in their official capacities and qualified immunity in their individual capacities. Attached to the motion to dismiss was Leonard's affidavit stating that Benjamin attempted to throw a liquid substance on officers and became assaultive when Harvey and Busby returned him from the security cell to his own cell. According to Leonard, Benjamin was restrained and taken to the infirmary for treatment, which he refused.

Benjamin filed a response in which he clarified that he was suing the defendants in their individual capacities only. He asserted that the defendants were not entitled to qualified immunity in their individual capacities because they had violated his clearly established constitutional rights.

The magistrate judge notified the parties that the defendants' motion to dismiss would be construed as a motion for summary judgment and invited the parties to submit additional summary judgment evidence by May 15, 1995, if they so desired. On May 19,

4

1995, Benjamin filed a motion for extension of time, dated May 5, requesting forty-five days to provide summary judgment evidence, and a motion for appointment of counsel.

On June 1, 1995, the magistrate judge denied the motion for extension of time and the motion for appointment of counsel. The magistrate judge also submitted his report recommending that the district court grant the defendants' motion for summary judgment.

Benjamin filed objections to the magistrate judge's report and recommendation, a notice of appeal,[*] a motion for leave to amend his complaint to delete the claims against Young and Hester and to add claims of retaliation and racial discrimination against unknown defendants, and an amended complaint. The district court conducted *de novo* review, adopted the determinations and recommendation of the magistrate judge, granted the defendants' motion for summary judgment, and denied Benjamin's outstanding motions.

III.

A.

Benjamin asserts that the district court erred in granting summary judgment in favor of the defendants on all of his claims. In an appeal from summary judgment, we review the record *de novo*, "examining the evidence in the light most favorable to [Benjamin],

---

[*] This court dismissed the appeal from the recommendation of the magistrate judge.

5

the nonmovant below." *Duckett v. City of Cedar Park,* 950 F.2d 272, 276 (5th Cir. 1992) (citation omitted). The first inquiry in examining a defense of qualified immunity asserted in a motion for summary judgment is whether the plaintiff has alleged "the violation of a clearly established constitutional right." *Siegert v. Gilley*, 500 U.S. 226, 231 (1991). We use "currently applicable constitutional standards to make this assessment." *Rankin v. Klevenhagen*, 5 F.3d 103, 106 (5th Cir. 1993). The second step is to "decide whether the defendant's conduct was objectively reasonable" in light of the legal rules clearly established at the time of the incident. *Spann v. Rainey*, 987 F.2d 1110, 1114 (5th Cir. 1993).

Summary judgment is proper when, viewing the evidence in the light most favorable to the nonmovant, "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." *Amburgey v. Corhart Refractories Corp.,* 936 F.2d 805, 809 (5th Cir. 1991); FED. R. CIV. P. 56(c). If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the nonmoving party to produce evidence of the existence of a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986).

B.

In order to prevail on a claim of an Eighth Amendment

6

violation in the medical sense, a prisoner must show that a prison official was deliberately indifferent to his serious medical needs constituting unnecessary and wanton infliction of pain. *Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976). A prison official acts with deliberate indifference "only if he knows that inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 114 S. Ct. 1970, 1984 (1994); *Reeves v. Collins*, 27 F.3d 174, 176-77 (5th Cir. 1994). It is not enough that the plaintiff is dissatisfied with the medical treatment he receives or that he alleges mere negligence. *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991).

Benjamin's authenticated medical records for October 1, 1993, indicate that he was treated in the infirmary by Nurse D. Cox, not Hester or Young. Benjamin complained that he was hit in the face and back. The area under his eye was tender to the touch, and there was a small scrape on his back. The nurse cleaned the area with alcohol, applied a cool compress to Benjamin's face, and gave him Advil for pain. Benjamin requested an x-ray of his face, and the nurse made a notation to the doctor regarding a possible x-ray.

Benjamin complained the following day to Young that he had a fractured jaw and blurred vision, but he accepted his breakfast and lunch trays, and he was able to open his mouth wide for an examination. Young noted that the swelling around his cheek did

not extend to the jaw, and his teeth were aligned.

Young contacted the emergency on-call doctor concerning a neurological appointment and a possible x-ray. Benjamin was placed on continuous watch and bed rest, and he received Feldene and compresses for his cheek. Two days later, Benjamin received an x-ray of his facial bones, and Hester made arrangements for an evaluation of his back pain.

Hester noted that Benjamin refused to see the doctor for an evaluation because he wanted to see a specialist at John Sealy Hospital. Benjamin continued to complain of headaches and backache, but no abnormalities were noted.

Assuming that Benjamin's complaint alleges an Eighth Amendment violation against Hester and Young that extends beyond the day of his injury to his follow-up care, he has not alleged facts to demonstrate that Hester's and Young's conduct was objectively unreasonable. The medical evidence does not indicate that the nurses disregarded a substantial risk to Benjamin by failing to take reasonable measures to abate it. Viewing the evidence in the light most favorable to Benjamin, there is no genuine issue for trial on the medical claim against the nurses, and summary judgment in their favor was proper.

### C.

At the first step of the *Siegert* analysis, Benjamin has

8

alleged a claim of excessive use of force against the officers. In *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992), the Court held that "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." "The Court further held that a prisoner need not show serious or significant injury in an excessive force claim against prison officers where the force used was unnecessary and wanton." *Hudson v. McMillian*, 962 F.2d 522, 523 (5th Cir. 1992). Under the present standard, which is applicable in this case under both prongs of the analysis, the following factors are relevant:

1.  the extent of the injury suffered;
2.  the need for the application of force;
3.  the relationship between the need and the amount of force used;
4.  the threat reasonably perceived by the responsible officials; and
5.  any efforts made to temper the severity of a forceful response.

Id. (citing Hudson, 503 U.S. at 7).

Benjamin did not respond within the time designated by the magistrate judge to present additional summary judgment evidence. He sought an extension of forty-five days because he wished to obtain an affidavit and other documentary evidence from Jimmy Wood, a justice of the peace, to support his allegations; his legal mail had been delayed; and he wished to submit additional medical

records indicating a scar from the injury to his head. Further, Benjamin stated that he was receiving legal assistance from "a more skillful pro-se litigant" from another unit and that the mail between them had been deliberately delayed. The magistrate denied the motion for an extension of time for the following reasons: Benjamin had not indicated what documents he needed from Wood or how the documents were related to his case; the medical records were already before the district court; and Benjamin had raised issues regarding eye and skin conditions that were not relevant to this action.

The magistrate judge determined that "the undisputed evidence reveals that the actions of Defendants in using force was justified" because "the force was necessary in order to restore order and maintain security and thus they did not violate clearly established law." Because Benjamin "offered no evidentiary support to the contrary," the magistrate judge recommended that the district court find that the officers were entitled to qualified immunity and grant their summary judgment motion. The district court agreed with the magistrate judge.

Benjamin contends that the district court misrelied on Leonard's version of the facts as presented in his affidavit because the affidavit is factually and legally insufficient and lacks credibility. Benjamin argues that the moving parties failed to demonstrate the absence of a genuine issue of fact; therefore, he was not required to provide additional affidavits and could

10

point to his sworn complaint and the evidence already in the record.

Leonard's affidavit stated the following with regard to the use of force: "I instructed Officers Harvey and Busby to return the inmate to his cell. While they were removing the inmate from the security cell, the inmate became assaultive and attempted to jerk away from the escorting officer, Harvey, Richard, CO III. . . . [T]he inmate was restrained on the floor and a video camera and leg restraints were called for." The affidavit conflicted with Benjamin's detailed verified complaint and the record of the extensive medical treatment Benjamin received after the incident. *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (holding that a verified complaint is competent summary judgment evidence). The movants have not established that there is no genuine issue for trial; therefore, the district court erred in granting summary judgment on the excessive-force claim. *See Amburgey*, 936 F.2d at 809.


D.

In his verified complaint, Benjamin alleged that Walton and Perkins denied him food because Benjamin had filed grievances against Walton. Prison officials may not retaliate against an inmate for pursuing grievance claims. *See Gibbs v. King*, 779 F.2d 1040, 1046 (5th Cir.), *cert. denied*, 476 U.S. 1117 (1986); *Jackson*

11

*v. Cain*, 864 F.2d 1235, 1248-49 (5th Cir. 1989). The movants did not address Benjamin's claim of retaliation or present any evidence to meet their initial burden of establishing that there was no genuine issue for trial. *See Isquith v. Middle South Util.*, 847 F.2d 186, 198-99 (5th Cir.) (noting that the burden does not shift to the nonmovant until the movant has successfully discharged its initial burden), *cert denied*, 488 U.S. 926 (1988). The district court erred in granting summary judgment on the retaliation claim.

## E.

Convicted prisoners are protected by the Eighth Amendment from exposure to egregious physical conditions that deprive them of basic human needs. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Under the Eighth Amendment, an inmate must be protected "against conditions of confinement which constitute health threats but not against those which cause mere discomfort or inconvenience." Wilson v. Lynaugh, 878 F.2d 846, 849 (5th Cir.), *cert. denied*, 493 U.S. 969 (1989). The prisoner must show that "the risk that the prisoner complains of [is] so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993).

The magistrate judge acknowledged that the movants did not address Benjamin's allegations that he was held in a cell for ten days without clothing, blankets, sheets, etc., in violation of the

12

Eighth Amendment. The magistrate judge determined that the cell was climate controlled, Benjamin was not exposed to a health risk, he suffered no injury, and the conditions caused mere discomfort and inconvenience. None of the factors that led to the magistrate judge's determination is in the record. The district court erred in granting summary judgment on this issue.

F.

Benjamin argues that the district court erred in denying his motion for appointment of counsel because he is uneducated and has limited knowledge of the law. He contends that his case involves multiple complex issues and that he was unable to amend his complaint to included all of his claims.

> A civil rights complainant has no absolute right to the appointment of counsel. *Freeze v. Griffith*, 849 F.2d 172, 175 (5th Cir. 1988); *Ulmer v. Chancellor*, 691 F.2d 209, 212 (5th Cir. 1982). In fact, the appointment of counsel is unnecessary unless a case presents exceptional circumstances. *Ulmer*, 691 F.2d at 212-213.

> Among the factors we must consider in deciding whether to appoint counsel are the complexity of the issues and the ability of [Benjamin] to represent himself adequately. *See id*. at 213.

*Hulsey v. Texas*, 929 F.2d 168, 172-73 (5th Cir. 1991).

Contrary to Benjamin's assertions, the facts of this case are not complicated, and Benjamin has demonstrated an ability to present the facts of his claim adequately. The court did not abuse its discretion in denying his motion for appointment of counsel.

13

*See Robbins v. Maggio*, 750 F.2d 405, 413 (5th Cir. 1985).

G.

Benjamin contends that the district court erred in denying his motion to amend his complaint, filed contemporaneously with his objections to the magistrate judge's report and recommendation. He argues that his amended complaint contained factual information concerning the excessive-force, retaliation, and conditions-of-confinement claims. Further, he contends that the new claims concerning a failure to train and supervise and a policy of racial discrimination are plainly linked to the claims in his original complaint.

"A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served . . . ." FED. R. CIV. P. 15(a). Benjamin's motion to amend his complaint and his amended complaint were filed after the magistrate judge prepared his report. At the time Benjamin sought to amend, he had filed his original complaint, and the defendants had filed a motion to dismiss, which was converted to a motion for summary judgment. Neither a motion to dismiss nor a motion for summary judgment is a responsive pleading that "extinguishes a plaintiff's right to amend a complaint." *Zaidi v. Ehrlich*, 732 F.2d 1218, 1219-20 (5th Cir. 1984). Therefore, Benjamin could exercise his right to amend automatically. Because Benjamin petitioned the court for leave to

14

amend, the court should have granted the petition.  *See Zaidi*, 732 F.2d at 1220.

IV.

The grant of summary judgment on the claims of deliberate indifference to Benjamin's serious medical needs against Young and Hester is AFFIRMED.  Because the movants did not meet their burden of establishing the absence of a genuine issue for trial, summary judgment of the claims of excessive use of force, retaliation, and unconstitutional conditions of confinement are VACATED and REMANDED for further proceedings.  Benjamin should be allowed to file an amended complaint.  Further, Benjamin's claims for equitable/injunctive relief should be dismissed as moot by the district court. *See  Powell v. McCormack*, 395 U.S. 486, 496 (1969).  He is no longer incarcerated at the Hughes Unit; therefore, he lacks a legally cognizable interest in the outcome.